**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| | : | |
| MATTDOGG, INC., d/b/a PURE FOCUS | : | |
| SPORTS CLUB, | : | |
| | : | Civil Action No. 20-6889 (FLW) (LHG) |
| Plaintiff, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| PHILADELPHIA INDEMNITY | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**WOLFSON, Chief Judge:**

This matter comes before the Court on a Motion to Remand filed by Plaintiff Mattdogg, Inc., doing business as Pure Focus Sports Club ("Plaintiff"). On April 27, 2020, Plaintiff filed this insurance coverage action in the Superior Court of New Jersey, Law Division, Mercer County, seeking a declaratory judgment that, *inter alia*, Defendant Philadelphia Indemnity Insurance Company ("Defendant") is obligated to provide business interruption coverage, including loss of income, resulting from the Executive Orders issued by the Governor of the State of New Jersey that limited the operation of nonessential businesses in response to the 2019 novel coronavirus ("COVID-19") pandemic. On June 5, 2020, Defendant removed the matter to this Court pursuant to 28 U.S.C. § 1332(a)(1), based on diversity jurisdiction. Plaintiff now moves to remand the matter to state court. For the reasons set forth below, Plaintiff's Motion is **GRANTED** and this matter is remanded to the Superior Court of New Jersey, Law Division, Mercer County, for further

proceedings.[1]

## I.    BACKGROUND

Plaintiff operates Pure Focus Sports Club, a full-service gym that operates 24 hours a day, in Brick, New Jersey.  (Compl. ¶ 15.) On November 15, 2019, Defendant issued Plaintiff an insurance policy (the "Policy"), which includes "coverage for commercial property, including but not limited to, loss of use of Plaintiff's building, personal property, and personal property of others under certain circumstances."  (*Id.* ¶¶ 6, 8.)  The Policy additionally provides coverage for "business income, extra expense[,] and civil authority relating to any covered loss under the Policy."[2]  (*Id.* ¶ 9.)  The Policy "is an 'all risk policy,' which covers all risk unless clearly and specifically excluded."  (*Id.* ¶ 10.)

On March 9, 2020, in response to the COVID-19 pandemic, New Jersey Governor Phillip Murphy issued Executive Order 103, which declared a Public Health Emergency and State of Emergency in New Jersey.  (*Id.* ¶ 11.)  Thereafter, on March 16, 2020, Governor Murphy issued Executive Order 104, which, *inter alia*, directed that "[g]yms and fitness centers" close "to

---

[1]    Also pending before the Court is Defendant's motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  Because the Court finds remand appropriate, Defendant's dismissal motion is denied as moot; Defendant may re-file its motion in state court.

[2]    The Policy provides coverage for business income if the insured sustains a loss "due to the necessary 'suspension' of [it's] 'operations' during the 'period of restoration,'" provided that the 'suspension' is "caused by direct physical loss of or damage to property at the premises" described in the Policy and that "[t]he loss or damage [was] caused by or result from a Covered Cause of Loss."  (ECF No. 8-2, at 89.)  The Policy also includes coverage for "Extra Expenses," meaning "necessary expenses [the insured] incur[s] during the 'period of restoration' that [the insured] would not have incurred if there had been no direct physical loss or damage to property by or resulting from a Covered Cause of Loss."  (*Id.*)  Additionally, the Policy includes Civil Authority coverage and provides that "[w]hen a Covered Cause of Loss causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income [the insured] sustain[s] and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises," provided that certain requirements are met.  (*Id.* at 90.)

members of the public, effective 8:00 p.m. on Monday, March 16, 2020." (*Id.* ¶ 12.)  Executive Order 104 further directed that gym and fitness centers were to remain closed for as long as the Order remained in effect.  (*Id.*)  In accordance with Executive Order 104, Plaintiff closed Pure Focus Sports Center.  (*See id.* ¶ 16.)  Since that closure, Plaintiff alleges that it has "suffered a substantial loss of business and income" and has "been forced to lay off staff." (*Id.*)

On April 27, 2020, Plaintiff filed a one-count Complaint against Defendant in the New Jersey Superior Court, Law Division, Mercer County, seeking a declaratory judgment as to Plaintiff's rights under the Policy.  While Defendant has not yet disclaimed coverage, Plaintiff "seeks a declaration that [Defendant] is obligated to provide business interruption and extra expense coverage under the Policy, including coverage under the Civil Authority provision." (*Id.* ¶ 22).  Plaintiff claims that such a declaration is necessary because "[i]nsurers throughout the country have been routinely denying coverage for business interruption losses associated with business closures resulting from 'Stay at Home' orders or other orders that restrict the ability of non-essential businesses to conduct business." (*Id.* ¶ 22.)  Plaintiff further seeks a declaration that the Policy's virus exclusion is not applicable under the circumstances and, moreover, void as a matter of public policy.[3]  (*Id.* ¶ 27.)

Defendant was served with Plaintiff's Complaint on May 6, 2020.  (Notice of Removal ¶ 6.)  Defendant then removed the matter to this Court pursuant to 28 U.S.C. § 1446(a) on the basis of diversity jurisdiction under 28 U.S.C. § 1332(a)(1). (*Id.* ¶¶ 3–5.)  Specifically, Defendant asserts that it is a citizen of Pennsylvania, Plaintiff is a citizen of New Jersey, and the amount in

---

[3]     The Policy specifically provides that the insurer will not "will not  pay for loss or damage caused by or resulting from any virus, bacterium or other micro-organism that induces or is capable of inducing physical distress, illness or disease."  (ECF No. 8-2, at 104.)

controversy exceeds $75,000. (*Id.* ¶¶ 7–9.) On June 26, 2020, Plaintiff filed the instant motion to remand, arguing, *inter alia*, the Court should exercise its discretion to decline to hear this declaratory action under the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201–2202.[4] Defendant opposes remand.

## II.    STANDARD OF REVIEW

Removal of a suit from state to federal court is proper only if the federal court to which the action is removed would have had original jurisdiction over the matter. *Entrekin v. Fisher Scientific, Inc.*, 146 F. Supp. 2d 594, 603–04 (D.N.J. 2001) (citing 28 U.S.C. § 1441(a)–(b)). Indeed, the statute provides in relevant part:

> Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.
> s

28 U.S.C. § 1441(a).

Remand is governed by 28 U.S.C. § 1447(c), which provides that a

> motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days of the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.

---

[4]    Plaintiff additionally argues that this matter should be remanded because Defendant, in its Notice of Removal, did not sufficiently allege that the amount in controversy exceeds $75,000, as required by 28 U.S.C. § 1332(a)(1) for diversity jurisdiction. Because, as set forth *infra*, I decline to exercise jurisdiction over this matter, I need not address this particular basis for remand. The Court notes, however, that generally "[i]n an insurance coverage declaration action, courts look to the value of the insurance policy and the damages alleged in the underlying case to determine whether the jurisdictional amount in controversy has been met." *Colony Ins. Co. v. Troensa Constr., Inc.*, No. 17-3577, 2018 WL 4676038, at *6 (D.N.J. Sept. 28, 2018) (citing *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995)).

28 U.S.C. § 1447(c).  Importantly, "[w]hen the propriety of the removal is challenged, the burden

is on the defendant to show that removal is proper, and the Court is obligated to 'strictly construe

the removal statutes against removal, and resolve any doubts in favor of remand.'"  *Hackensack*

*Univ. Med. Ctr. v. Lagno*, No. 06-687, 2006 WL 3246582, at *2 (D.N.J. Nov. 3, 2006) (quotation

omitted).

### III.    DECLARATORY JUDGMENT ACT

Under the DJA, "any court of the United States . . . *may* declare the rights and other legal

relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a) (emphasis added).

The permissive language of the DJA "confer[s] on federal courts unique and substantial discretion

in deciding whether [in the first instance] to declare the rights of litigants."  *Wilton v. Seven Falls*

*Co.*, 515 U.S. 277, 286 (1995).  In other words, 'district courts are authorized, 'in the sound

exercise of [their] discretion, to stay or to dismiss an action seeking a declaratory judgment before

trial or after all arguments have drawn to a close.'"  *Reifer v. Westport Ins. Corp.*, 751 F.3d 129,

139 (3d Cir. 2014) (alteration in original) (quoting *Wilton*, 515 U.S. at 286).  Nevertheless, "[a]

federal district court's discretion to decline jurisdiction depends on whether the complaint seeks

legal or declaratory relief."  *Rarick v. Federated Serv. Ins. Co.*, 852 F.3d 223, 227 (3d Cir. 2017).

In that connection, when an action contains independent legal claims, "federal courts have a

virtually unflagging obligation' to exercise jurisdiction."  *Id.*  When, however, an action seeks only

declaratory relief, without independent legal claims, courts may decline jurisdiction if appropriate.

*Id.*  Importantly, it is undisputed, here, that Plaintiff seeks only declaratory relief under the DJA

and asserts no other independent legal claims in its Complaint.

In considering whether to exercise jurisdiction over a declaratory action, "[c]ourts should

first determine whether there is a 'parallel state proceeding,'" as "the absence of a pending parallel

state proceeding[] militates significantly in favor of exercising jurisdiction, although it alone does not require such an exercise." *Kelly v. Macum Specialty Ins. Grp.*, 868 F.3d 274, 282 (3d Cir. 2017) (quoting *Reifer*, 751 F.3d at 144). A parallel state proceeding for this purpose "is a pending matter 'involving the same parties and presenting [the] opportunity for ventilation of the same state law issues.'" *Id.* at 284 (alteration in original) (quoting *Wilton*, 515 U.S. at 283). The Third Circuit has instructed that "the mere potential or possibility that two proceedings will resolve related claims between the same parties is not sufficient to make those proceedings parallel; rather, there must be a substantial similarity in issues and parties between contemporaneously pending proceedings." *Id.* at 283–84. It is undisputed that there is no parallel state court proceeding between the parties.

Nevertheless, while "the absence of pending parallel state court proceedings militates significantly in favor of exercising jurisdiction . . . , it alone does not require such an exercise." *Reifer*, 751 F.3d at 144. Rather, where there is no parallel state proceeding, a district court declining jurisdiction under the DJA must "be rigorous in ensuring themselves that the lack of pending parallel state proceedings is outweighed by opposing factors." *Id.* The Third Circuit has promulgated the following, non-exhaustive list of factors to guide that analysis:

> (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy;
>
> (2) the convenience of the parties;
>
> (3) the public interest in settlement of the uncertainty of obligation;
>
> (4) the availability and relative convenience of other remedies;
>
> (5) a general policy of restraint when the same issues are pending in a state court;
>
> (6) avoidance of duplicative litigation;

      (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for *res judicata*; and

      (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as failing within the scope of a policy exclusion.

*Id.* at 146; *see also Kelly*, 868 F.3d at 282–83.  The Third Circuit has instructed district courts to give "meaningful consideration" to any relevant factors, and that some factors may be weighed heavier than others based on the circumstances of each case.  *Reifer*, 751 F.3d at 146.  The circuit court has also advised that "there will be situations in which district courts must consult and address other relevant law or considerations."  *Id.*  Importantly, in the insurance coverage context, the fifth, sixth, and eighth factors are "particularly relevant," to the extent applicable, based on the facts of a particular case.  *See Ewart v. State Farm Mutual Auto. Ins. Co.*, 257 F. Supp. 3d 722, 725 (E.D. Pa. 2017) (citing *State Auto Insurance Cos. v. Summy*, 234 F.3d 131, 134 (2000)).  In that connection, "[t]he fact that district courts are limited to predicting—rather than establishing—state law requires 'serious consideration' and is 'especially important in insurance coverage cases.'"  *Reifer*, 751 F.3d at 148 (quoting *Summy*, 234 F.3d at 135).

      Here, Plaintiff contends that the Court should decline jurisdiction under the DJA because, it argues, that "[t]his case presents substantial novel and unsettled questions of state insurance law." (Pl. Moving Br., at 11.)  Specifically, Plaintiff contends that "[t]here is no state law authority interpreting how the provisions of the business interruption insurance apply in the context of the coronavirus (or any virus) and the Governor's Orders." (*Id.*)  Defendant, however, maintains that the *Reifer* factors weigh against abstention and urges the Court to retain jurisdiction. (Def. Opp. Br., at 9.)  Defendant reasons that this case presents only a "simple contract dispute" and does not raise any unsettled issue of state law. (*Id.* at 10.)

Having carefully considered the *Reifer* factors, I find that the third and fifth factors are most relevant and weigh significantly in favor of remand.[5]  Under the third *Reifer* factor, I must consider "the public's interest in settlement of the uncertainty of obligation." *Reifer*, 751 F.3d at 146.  Generally, "there is no federal interest involved in [cases] concern[ing] purely questions of state law." *U.S. Liab. Ins. Co. v. Singer*, 2016 WL 5858984, at *5 (D.N.J. Oct. 6, 2016) (alteration in original) (quoting *1100 Adams St. Condo Ass'n v. Mt. Hawley Ins. Co.*, No. 14-2203, 2014 WL 5285466 (D.N.J. Oct. 15, 2014)); *see also Summy*, 234 F.3d at 136 ("The desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum.").  In that connection, the Third Circuit has instructed that "federal courts should hesitate to entertain a declaratory judgment action where the action is restricted to issues of state law." *Atl. Mut. Ins. Co. v. Gula*, 84 F. App'x 173, 174 (3d Cir. 2003) (citing *Summy*, 234 F.3d at 134–35).  Thus, "[w]hen a state court, 'which has more familiarity with the underlying cases, can equally decide' the insurance coverage or exclusion issue, the public interest is not 'better served by the federal court deciding the issue.'" *Venezie Sporting Goods, LLC v. Allied Ins. Co. of Am.*, No. 20-1066, 2020 WL 5651598, at *4 (W.D. Pa. Sept. 23, 2020) (Hornak, J.) (quoting *Allstate Fire & Cas. Ins. Co. v. Archer*, No. 17-331, 2018 WL 2538859, at *4 (W.D. Pa. June 4, 2018)).  Indeed, "where the applicable state law is uncertain or undetermined, district courts should be particularly reluctant to entertain declaratory judgment actions." *Summy*, 234 F.3d at 135.

---

[5]  The remaining *Reifer* factors do not significantly impact the Court's analysis.  For example, the second and fourth factors—the convenience of the parties and the availability of other remedies—are neutral as both forums are located in the same location and can provide Plaintiff with its requested remedy.  The sixth and seventh factors are similarly not implicated because there are no parallel proceedings which present any issue of duplicative litigation or *res judicata* concerns.  Nor is the eighth factor relevant, as there is no underlying action in which Defendant has a duty to defend Plaintiff.

Here, Plaintiff contends that the circumstances that give rise to its claim, *i.e.*, the COVID-19 pandemic and the related "Stay at Home" Orders, are unique and present substantial novel questions of New Jersey contract and insurance law. Defendant, however, submits that Plaintiff's claim is governed by settled State law. (Def. Opp. Br., at 10–11.) In that regard, Defendant contends that because New Jersey courts have interpreted similar provisions governing business interruption and civil authority coverage, this case does not implicate any novel issue. The Court disagrees. Plaintiff's Complaint seeks a declaration that "[t]he virus exclusion in the Policy does not apply to the losses asserted by Plaintiff," and, further, that "[a]pplication of the virus exclusion in the Policy to Plaintiff's losses is void as against public policy." (Compl. ¶ 26.) To defend this case, Defendant posits that Plaintiff is not entitled to coverage for losses related to its closure based on the Policy's virus exclusion, the absence of actual physical loss or damage to Plaintiff's fitness center, and because Plaintiff has not shown that the requirements for civil authority coverage have been met. (*See* Br. in Supp. Def.'s Mot. to Dismiss, ECF No. 8-1.) Furthermore, Defendant contends that Plaintiff is not entitled to a declaration to Civil Authority coverage because "Plaintiff's allegations . . . fail to satisfy the Policy's requirement that the civil authority," *i.e.*, Governor Murphy's COVID-19-related Executive Orders, "prohibited access to Plaintiff's premises 'due to direct physical loss or damage to property, other than at the described premises.'" (*Id.* at 17.) As such, one of the key issues in this case is whether Plaintiff's business losses were caused by the presence of the COVID-19 virus or, rather, caused by the Executive Orders which prompted the closure of Plaintiff's restaurant. In other words, resolution of Plaintiff's claim requires consideration of whether a state government order, which required partial closure of businesses, constitutes "loss or damage caused directly or indirectly" by a virus. As one court has observed, the question of "whether a government stay-at-home order constitutes a 'direct or

indirect' cause related to the application of a virus exclusion" is an "inquir[y] that strike[s] the Court as 'circumstance-specific determinations' that would be made with 'relatively undetermined state law' and implications of important state public policy." *Venezie Sporting Goods, LLC*, 2020 WL 5651598, at *4. I agree with that assessment. Despite Defendant's protestations to the contrary, this matter does not involve a run-of-the-mill insurance coverage dispute. Rather, this dispute emanates from a once-in-a-lifetime pandemic that has spurred the mass closure of businesses throughout the State of New Jersey, and in that context, whether the losses caused by those closures are covered by commercial insurance contracts. Invariably, consideration of these claims will require careful weighing of public policy in an area of state law that is not only unsettled, but the outcome of this dispute would undoubtedly have a far-reaching effect on businesses in New Jersey. Because of this unique circumstance, the Court is hesitant to exercise jurisdiction and weigh in on an important state issue in the first instance. As the Third Circuit has made clear, district courts "do not establish state law, but are limited to predicting it." *Summy*, 234 F.3d at 135. For these reasons, I find that the public interest in resolving the uncertainty of obligation is best served by remand as it allows the New Jersey courts the opportunity to determine the impact of Governor Murphy's Orders on insurance coverage in the State of New Jersey.

The fifth *Reifer* factor similarly weighs in favor of remand. The fifth factor counsels a general policy of restraint when the same issues are pending in state court. *Reifer*, 751 F.3d at 146. A significant number of cases related to insurance coverage for business interruption based on COVID-19 closures are pending across the country, including in the New Jersey state courts.[6] As these cases remain pending, the law on this issue remains unsettled. Indeed, as one New Jersey

---

[6]     Indeed, many of these cases have been assigned to one judge, the Honorable Douglas H. Hurd, Presiding Civil Judge for the Superior Court of New Jersey, Law Division, Mercer County. (Ferrara Decl. ¶ 4.)

state court judge recently observed in denying a motion to dismiss a similar state court action, "there is limited legal authority in the State of New Jersey addressing this issue," which is not surprising given that "the State of New Jersey was recently faced with a historic event which was unprecedented with respect to the losses sustained by businesses across the State of New Jersey due to the proliferation of the COVID-19 pandemic." (*See* ECF No. 24, at 26.) Were this Court to step in and exercise jurisdiction over this matter, it could potentially issue a decision inconsistent with that of the state courts. Such an outcome would upend uniformity at a time when businesses need clarity and consistency in law. Without it, businesses and insurance companies alike would be governed by a patchwork of case law, further subjecting them to the chaos already caused by the pandemic. Accordingly, I find that the fifth *Reifer* factor weighs significantly in favor of remand.

Having scrutinized the *Reifer* factors, I will, in my discretion, decline to exercise jurisdiction under the DJA over this matter. My decision in this regard is in line with decisions of our sister districts, the Eastern and Western Districts of Pennsylvania, which have all remanded to state court similar declaratory judgment actions involving insurance coverage in the wake of the COVID-19 pandemic. *See Venezie Sporting Goods, LLC*, 2020 WL 5651598, at \*5 ("While it is undeniable that the COVID-19 pandemic presents a complex and novel factual situation, the resulting legal disputes are deeply tied to Pennsylvania public policy, as well as the intricacies of Pennsylvania insurance contract interpretation, such that the Court believes it is most appropriate to 'step back' in this instance."); *Dianoia's Eatery, LLC v. Motorists Mutual Ins. Co.*, No. 20-787, 2020 WL 5051459, at \*4 (W.D. Pa. Aug. 27, 2020) (Fisher, J.) ("[T]he Commonwealth's interest in this and similar litigation is paramount such that a remand to state court is the appropriate course in this case."); *Greg Prosmushkin, P.C. v. Hanover Insurance Group*, ___ F. Supp. 3d ___, 2020

WL 4735498, at *5 (E.D. Pa. Aug. 14, 2020) (Jones, J.) ("Given the novelty of the state law issue of insurance coverage for losses resulting from the COVID-19 pandemic, the Pennsylvania state courts are clearly better equipped to settle the uncertainty of obligation, and it is in the public's interest for them to do so.").  Ultimately, the unique nature of the COVID-19 pandemic and its resulting legal issues are best for the New Jersey state courts to resolve, as the resolution of these issues involve significant questions of public policy.  Accordingly, as a matter of comity, this matter shall be remanded to state court.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is **GRANTED**.[7]  Defendant's Motion to Dismiss is **DENIED** as moot.  This matter shall be remanded to the Superior Court of New Jersey, Law Division, Mercer County for further proceedings.   An appropriate Order accompanies this Opinion.

DATED:  October 16, 2020                                        /s/ Freda L. Wolfson
                                                               Freda L. Wolfson
                                                               U.S. Chief District Judge

---

[7]    The Court notes that its Opinion remanding this matter is substantially similar to its Opinion in *Mark Daniel Hospitality v. AmGUARD Insurance Co.*, Civil No. 20-6772 (FLW) (TJB), also being filed on this date.  Plaintiffs in both this case and *Mark Daniel Hospitality* have the same counsel and raise identical arguments in support of remand.  While the insurer defendants in each of these cases differ and have retained different counsel, nonetheless the arguments they have raised in opposition to remand are substantively similar.